## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AJA KING O/B/O MINOR CHILD, | : | |
| | : | Civil Action No. 12-06573 |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| COMMISSIONER OF SOCIAL | : | |
| SECURITY, | : | |
| | : | |
| Defendant. | : | |

<u>**CHESLER**</u>, District Judge

### <u>INTRODUCTION</u>

This matter comes before the Court on the appeal by Aja King, on behalf of her minor daughter, Ahtiana King ("Plaintiff"), of the final decision of the Commissioner of Social Security ("Commissioner") determining that Plaintiff is not eligible for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). Plaintiff asserts that substantial evidence exists in the administrative record to support a finding of disability and asks this Court to reverse the decision of the Commissioner or, in the alternative, to remand these claims to the Commissioner for reconsideration. This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3)[1] and, for the reasons set forth in this Opinion, this Court finds that the Commissioner's decision is supported by substantial evidence and will be affirmed.

---

[1] These sections of the Act provide that any individual may obtain a review of an final decision of the Secretary of Health and Human Services ("Secretary") made subsequent to a hearing to which he or she was a party. The federal district court for the district in which the plaintiff resides is the appropriate place to bring such action. 42 U.S.C. § 405(g).

## <u>PROCEDURAL HISTORY</u>

On July 21, 2009, Aja King, mother of Plaintiff, filed an application on behalf of Plaintiff for SSI, claiming disability due to a learning disorder and blindness in one eye.  The application was denied.  (Tr. 53-65).  Plaintiff then requested a hearing before an administrative law judge. (Tr. 66-69).  A hearing was held before Administrative Law Judge Dennis O'Leary (the "ALJ") on January 26, 2011, and the ALJ issued a decision on March 3, 2011, finding that Plaintiff was not disabled within the meaning of the Act.  The following is a summary of his findings:

1. The claimant was born on February 1, 1997.  Therefore, she was a school-age child on July 21, 2009, the date the application was filed, and is currently an adolescent. (20 C.F.R. § 416.926a(g)(2)).

2. The claimant has not engaged in substantial gainful activity since July 21, 2009, the application date. (20 C.F.R. §§ 416.924(b) and 416.971 *et seq.*)

3. The claimant has the following severe impairments: learning disorder and blindness in one eye. (20 C.F.R. § 416.924(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.924, 416.925 and 416.926).

Based on these findings, the ALJ concluded that Plaintiff was not eligible for SSI under § 1614(a)(3)(C) of the Act.  Plaintiff then requested review of the decision by the Appeals Council, which the Appeals Council denied on August 17, 2012.  (Tr. 1-8.)  District court action was thereafter timely commenced.

## STATEMENT OF FACTS

**A.     Background**

Plaintiff was born on February 1, 1997.  She was a school-age child on July 21, 2009, the date the application was filed, and was an adolescent on March 3, 2011, the date of the ALJ's decision.

**B.     Educational History**

On February 17, 2009, while Plaintiff was in fifth grade, she was evaluated by the Cherry Creek School District in Aurora, Colorado in order to determine her continued eligibility for special education services. (Tr. 172.)  At that time, Plaintiff spent 88% of her time with non-disabled peers in the fifth grade, while the remainder of the time she received support from special education teachers in smaller group settings. (Tr. 175.)  It was noted at her special education evaluation meeting that Plaintiff had been identified with a learning disability in the area of reading fluency and had been diagnosed with ADHD. (Tr. 172.)  Pamela Lindal-Hansum, a learning specialist at Cherry Creek School District, noted in her report that Plaintiff often has trouble focusing during class, but that with an increase in ADHD medication in February of 2009, Plaintiff's ability to stay focused and remain on task improved. (Tr. 172.)  Plaintiff's overall proficiency in reading, writing and math was tested with a Colorado Student Assessment Program ("CSAP") assessment in 2008.  (Tr. 172.)  Plaintiff was deemed "partially proficient" in all of these areas.  In addition, she underwent Measure of Academic Progress ("MAP") testing in the spring of 2008 in the areas of reading and math and scored a 189 (very low) and a 196 (very low), respectively. (Tr. 172.)  Her oral reading fluency was assessed in February of 2008 at a score of 72, below the third grade level goal, and she underwent a Maze reading probe (a reading

comprehension assessment) in January of 2008 where she scored a 14, also below third grade level goals.  (Tr. 172.)  It was noted that Plaintiff's oral reading fluency was of particular concern. (Tr. 173.)  It was then recommended that Plaintiff continue with special education services in light of her learning disability and continued difficulties with reading, writing, and staying on task. (Tr. 175.)

Upon entering middle school in New Jersey, it was once again determined by the Public Schools of Edison Township that Plaintiff would be placed in a special education program. (Tr. 139.)  Notification of this determination and a copy of Plaintiff's Individualized Education Program were sent to her parents on November 22, 2010. (Tr. 139.)  In this report, Plaintiff's seventh grade teachers stated that Plaintiff has difficulty reading aloud in class, but that she typically completes in-class assignments diligently. (Tr. 144.)  In addition, it was noted that Plaintiff often gets distracted and requires refocusing during class and that, despite a willingness to participate during class, she often has trouble with writing assignments. (Tr. 144.)  Yet, both her math and science teachers stated that Plaintiff "presents in the. . .classroom as a happy, interested and motivated student" and that she is able to remain organized and "independently record her homework in her planner when it is given, without prompting." (Tr. 144-145.)

**C.      Psychological Evaluations**

Plaintiff was evaluated by school psychologist Josephine Renna in April 2005 at James Madison Primary School. (Tr. 159.)  Plaintiff was repeating first grade at the time of this evaluation.  Renna administered the Wechsler Intelligence Scale for Children-Fourth Ed. ("WISC-IV") and Plaintiff's general cognitive ability and perceptual reasoning abilities were found to be average, while her verbal comprehension abilities were assessed as low average. (Tr.

163.)  Plaintiff's verbal reasoning abilities were measured by the Verbal Comprehension Index and were found to be within the low average range. (Tr. 163.)  Additionally, Plaintiff's nonverbal reasoning skills were measured by the Perceptual Reasoning Index and fell within the average classification. (Tr. 163.)  Renna also noted that projective measures suggested that Plaintiff is a "social child who is somewhat more mature than her peers." (Tr. 163.)

In February 2010, psychologist Amy Crockett conducted a psychological evaluation of Plaintiff at the request of the Social Security Administration. (Tr. 215.) At the time of this evaluation, Plaintiff was 13 years old. (Tr. 215.)  In terms of daily activity, it is noted in the psychologist's report that Plaintiff has to be reminded by her mother to "perform personal self-care activities regularly." (Tr. 217.)  Dr. Crockett concluded that Plaintiff's symptoms were indicative of ADHD and Post-Traumatic Stress Disorder ("PTSD") and that she could benefit from continued therapy. She further noted that Plaintiff "continues to demonstrate attention problems, forgetfulness, fidgetiness, intrusiveness, excessive talk at times, restlessness, and excessive energy." (Tr. 218.)  Dr. Crockett finally indicated that Plaintiff's ability to "perform self-care activities is average," but that she does not initiate them without repeated reminders. (Tr. 218).

## D.    Medical Records and Evaluations:

On May 20, 2005, Plaintiff was evaluated by Dr. Rosenberg, who noted that, based on his physical findings, most notably the poor vision in Plaintiff's right eye, there is nothing inhibiting Plaintiff from performing work-related activities later on in life. (Tr. 166-167.)

Plaintiff visited Advanced Pediatric Associates in both September and December 2009. (Tr. 189-206.)  During her September visit, after reviewing questionnaires completed by her

mother and teacher, pediatrician Dr. Oh concluded that Plaintiff had trouble completing tasks and staying organized, but that her performance and behavior in school were improving. (Tr. 194.)  It was also noted that as a result of her ADHD medication, Plaintiff had been experiencing headaches that wore off in the middle of the day. (Tr. 194.)  In addition, Dr. Oh determined that Plaintiff's attention span was poor and that she exhibited impulsive behavior, prompting a recommended increase in Plaintiff's ADHD medication.

## DISCUSSION

### A.  Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3) and must affirm the Commissioner's decision if it is "supported by substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  "Although substantial evidence is more than a mere scintilla, it need not rise to the level of a preponderance."  McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir. 2004).  The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. See Taybron v. Harris, 667 F.2d 412, 413 (3d Cir. 1981).

The reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder."  Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir.

1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993); see also 42 U.S.C. §

405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive.").  Where the evidence is susceptible of more than one

rational interpretation, it is the Commissioner's conclusion which must be upheld.  Monsour

Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).  If the ALJ's findings of fact

are supported by substantial evidence, this Court is bound by those findings, "even if [it] would

have decided the factual inquiry differently."  Fargnoli v. Halter, 247 F.3d 34, 38 (3d Cir. 2001);

see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).

In determining whether there is substantial evidence to support the Commissioner's

decision, the reviewing court must consider: "(1) the objective medical facts; (2) the diagnoses

and expert opinions of treating and examining physicians on subsidiary questions of fact; (3)

subjective evidence of pain testified to by the claimant and corroborated by family and

neighbors; (4) the claimant's educational background, work history and present age."  Blalock v.

Richardson, 483 F.2d 773, 776 (4th Cir. 1973).  "The presence of evidence in the record that

supports a contrary conclusion does not undermine the Commissioner's decision so long as the

record provides substantial support for that decision."[2]  Sassone v. Comm'r of Soc. Sec., 165 F.

App'x 954, 955 (3d Cir. 2006) (citing Blalock, 483 F.2d at 775).

## B.  Standard for Awarding Benefits Under the Act

Title XVI of the Act provides for the payment of disability benefits to indigent persons

under the SSI program.  42 U.S.C. § 1382(a).  With respect to claims filed on behalf of children:

---

[2] Throughout the evaluation, the ALJ "must give a reasoned explanation for his decision, including how he factored
in evidence that arguably pointed to the opposite conclusion." Morrison ex re. Morrison v. Comm'r of Soc. Sec.,
268 F. App'x 186, 187 (3d Cir. 2008) (citing Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 119-20 (3d Cir. 2000);
Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)). In Jones, the Third Circuit noted that "Burnett does not require
the ALJ to use particular language or adhere to a particular format in conducting his analysis.  Rather, the function
of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit
meaningful review." Jones, 364 F.3d at 505.

(i)     An individual under the age of 18 shall be considered disabled for the purpose of this title if that individual has a medically determined physical or mental impairment, which results in marked or severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months.

(ii)    Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity. . . may be considered disabled.  42 U.S.C. § 1382c(a)(3)(C).

To qualify for SSI, the claimant bears the initial burden of establishing her disability.  42 U.S.C.

§§ 1382c(a)(3)(C)(i); 423(d)(5); <u>see also</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

## A.  The Evaluation Process

Determinations of whether a child under age eighteen is disabled, and thus eligible for

SSI, are made by the Commissioner pursuant to the three-step sequential evaluation process

outlined in 20 C.F.R §§ 416.924 and 416.926a.[3]  The evaluation was recently summarized by the

Third Circuit:

A child under eighteen is only eligible for SSI benefits if (1) he is not doing substantial gainful activity; (2) he has a medically determinable impairment or combination of impairments that is severe; and (3) the impairment or combination of impairments meets, medically equals, or functionally equals the severity of one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 416.924.

---

[3] "In making any determination with respect to whether an individual is under a disability…the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability." 42 U.S.C.A. § 423(d)(5)(B).

Morrison ex rel. Morrison, 268 F. App'x. 186, 187-88 (3d Cir. 2008).  At the first step of the evaluation process, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. § 416.924(b).  Substantial gainful activity is "work that involves doing significant and productive physical or mental duties; and is done (or intended) for pay or profit." 20 C.F.R. § 416.910.  See also 20 C.F.R. § 416.972.  If the claimant is found to be engaged in such activity, the claimant is not "disabled" and the disability claim will be denied.  Id.  If not, the Commissioner addresses Step Two of the process.

At Step Two, the Commissioner must determine whether the claimant has a medically determinable impairment that is severe.  20 C.F.R. § 416.924(c).  To satisfy the requirements of Step Two, the claimant must establish (1) the existence of a medically determinable physical or mental impairment, and (2) that such impairment is "severe" within the meaning of the Regulations.  See 20 C.F.R. §§ 416.920a, 416.924, 416.929(b); 42 U.S.C. § 423(d)(5).

*(1) Need to Establish the Existence of a Medically Determinable Impairment.*

To demonstrate that a disability exists, the claimant must first establish the existence of a medically determinable impairment by presenting evidence that her affliction "results from anatomical, physiological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3); SSR 96-4p.  While subjective complaints of pain are considered, alone, they are not enough to establish disability.  42 U.S.C. § 423(d)(5)(A).  Thus, "regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings."  SSR 96-4p.  "In the absence of a showing that there

is a 'medically determinable physical or mental impairment,' an individual must be found not disabled at Step Two of the sequential evaluation process." Id.

   *(2) Severity Determination.*

The Social Security Regulations and Rulings, as well as case law applying them, discuss the Step Two severity determination in terms of what is "not severe." Newell v. Commissioner, 347 F.3d 541, 546 (3d Cir. 2003) (citing Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996)). According to the Regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 416.921(a), or, in the case of a child, "to do age-appropriate activities," SSR 96-3p.

In making the Step Two severity determination, the Commissioner must first evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities, or, in the case of a child, "to function independently, appropriately, and effectively in an age-appropriate manner." SSR 96-3p; 20 C.F.R. § 416.929(c). The claimant's symptoms will be determined to diminish the capacity to function to the extent that the claimant's alleged functional limitations due to his symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the record. SSR 96-7p; 20 C.F.R. § 416.929(c)(4).

The Commissioner then considers such findings on the functionally limiting effects of the claimant's symptoms together with all objective medical and other evidence in making the ultimate Step Two severity determination. SSR 96-7p.

If a claimant is found to have a medically determinable severe impairment or combination of impairments, the Commissioner addresses Step Three of the sequential evaluation process. If not, the claimant is determined to be not "disabled" and the disability claim will be denied. 20 C.F.R. § 416.924(c).

At Step Three, the Commissioner must determine whether the claimant has an impairment or combination of impairments that meets, medically equals, or is functionally equal in severity to an impairment listed in the Appendix. 20 C.F.R. § 416.924(d). A claimant's impairment medically equals a listing when "the medical findings are at least equal in severity and duration of the listed findings." 20 C.F.R. § 416.926(a). The Commissioner will compare medical evidence in the record to corresponding medical criteria shown for the listed impairment to make this determination. Id.

If the claimant's impairment does not meet or medically equal a listed impairment, the Commissioner will next determine if the impairment is functionally equal to the listed impairments. 20 C.F.R. § 416.926a(a). To satisfy the "functionally equal" standard, the claimant must show that she suffers from an impairment of "listing-level" severity, meaning that the impairment (or combination of impairments) causes a "marked" limitation in two of six domains of functioning or an "extreme" limitation in one of those six domains. 20 C.F.R. § 416.926a(a). The six domains are: (i) acquiring and using information, (ii) attending and completing tasks, (iii) interacting and relating with others, (iv) moving about and manipulating objects, (v) caring for oneself, and (vi) health and physical well-being. Id. § 416.926a(b)(1). Parents and teachers may be called upon to provide information regarding a child's limitations with respect to these six

domains since they see the child regularly and are able to describe the child's functioning at home, at school, and in the community. 20 C.F.R. § 416.926a(b)(3).

## B. The ALJ's Decision

In brief, the issue before the ALJ was whether Plaintiff is entitled to SSI under § 1614(a)(3)(C) of the Act beginning on July 21, 2009, the date the application was filed. After examining the record and applying the three-step sequential evaluation, the ALJ determined that Plaintiff had not been disabled, as defined by the Act, at any time since July 21, 2009.

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision, 20 C.F.R. §§ 416.924(b), 416.972, and, therefore, Plaintiff satisfied the first step of the evaluation process. At Step Two, the ALJ found that Plaintiff had the medically determinable, severe impairments of a learning disorder and blindness in one eye. At Step Three, the ALJ first found that Plaintiff's impairments, or combination of impairments, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ then went on to find that Plaintiff did not have an impairment or combination of impairments that functionally equals the listings. 20 C.F.R. § 416.926a. In making this functional equivalence determination, the ALJ found that Plaintiff has a marked limitation in the domain of attending and completing tasks, but that Plaintiff has a less than marked limitation in all other domains. (Tr. 8.)

The ALJ identified and discussed relevant evidence from Plaintiff's school and medical records, as well as information from school teachers and family members. The ALJ acknowledged evidence concerning Plaintiff's learning and emotional disabilities,

and the fact that some academic and behavioral difficulties persisted into 2010. The ALJ also discussed evidence weighing against a finding of disability, including school reports indicating that, at the advent of middle school, Plaintiff presented as an engaged and happy participant in the classroom, and continued to make improvements in her ability to stay focused during classroom activities as well as in the independent completion of assignments. (Tr. 144-145.) The ALJ made particular note of Plaintiff's apparent "dramatic improvement[s]" in the classroom. Even in the domain of attending and completing tasks where the ALJ found a marked limitation, he stated that "medication appears to help in this domain" (Tr. 7-8.)

## C. Plaintiff's Appeal

Plaintiff argues on appeal that substantial evidence in the administrative record establishes entitlement to the benefits applied for and thus requests that this Court reverse the Commissioner's final administrative decision and order the payment of benefits. Alternatively, Plaintiff argues that the Commissioner's final administrative decision is not based on the substantial evidence of record and thus requests that this Court remand that decision and order a new hearing and a new decision.

Plaintiff makes three arguments on appeal. Plaintiff contends that: (1) the ALJ erred in his Step Two analysis in not finding ADHD and PTSD to be severe impairments; (2) there is no analysis at Step Three with regard to medical equivalence; and (3) the ALJ's determinations in the "health and well-being" and "caring for yourself" domains are not based on substantial evidence and that the ALJ erred in not finding a marked or severe impairment in either of these domains.

### D.  Analysis

#### a.  Did the ALJ err in his analysis at Step Two by not finding ADHD and PTSD to be severe impairments?

The ALJ did not err in his analysis at Step Two.  Plaintiff argues that, in not finding her ADHD and PTSD diagnoses to be severe impairments at Step Two, the ALJ impacted his Step Three analysis.  This Court does not agree.  It must first be emphasized that the Step Two inquiry is a *de minimis* screening device used to dispose of groundless claims.  Bowen v. Yuckert, 482 U.S. 137 (1987).  In addition, the analysis at Step Two is wholly independent of the analysis at later steps.  Accordingly, inclusion or exclusion of particular impairments at Step Two does not affect the ultimate disability determination.  Where an ALJ finds in a claimant's favor at Step Two, "even if he. . .erroneously concluded that some of [the claimant's] other impairments were non-severe, any error [is] harmless."  Salles v. Comm'r of Soc. Sec., 229 Fed. App'x 140, 145 n.2 (3d Cir. 2007).  Moreover, although the ALJ did not find ADHD to be a severe impairment, the ALJ thoroughly evaluated and considered ADHD in his Step Three analysis.  There is no basis to assert that the findings at Step Two impacted the ALJ's ultimate disability determination.

#### b.  Did the ALJ err in the analysis at Step Three with regard to medical equivalence?

Plaintiff contends that the ALJ did not adequately compare the combined effect of all of Plaintiff's impairments with one or more of the Commissioner's listings and that this violated the requirement set forth in Cotter v. Harris, 650 F.2d 481 (3d Cir. 1981).  In *Cotter*, the Court stated that "[t]he ALJ has a duty to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits" and

that "an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." Id. Plaintiff further argues that the ALJ must compare the "constellation of [Plaintiff's] symptoms and diagnoses against a single listing in order to determine medical equivalence." (Pl.'s Br. 18.)

To the extent that Plaintiff attempts to invoke Cotter v. Harris, the standard before the reviewing court is not that the ALJ must mention every shred of evidence. See Jones v. Barnhart, 364 F.3d 501, 504-05 (3d Cir. 2004). Rather, the record must simply "include a statement of. . .factual foundations. . .so that a reviewing court may know the basis for the decision." Baerga v. Richardson, 500 F.2d 309, 312 (3d. Cir. 1974). Here, the ALJ fully exercised this responsibility by explaining the factual basis for his Step Three determination. Furthermore, Plaintiff maintains the burden of proof at the three steps of this disability determination. Accordingly, at Step Three, Plaintiff has the burden to show that her impairments met or functionally equaled the requirements of a specific listing. In order for an impairment to match a listing, "it must meet *all* of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 529-30 (1990)(emphasis added). Here, the ALJ fully considered the listings by stating:

> In particular, I have reviewed the various visual and mental listings set forth in sections 102.00, and 112.00 of the medical listings and I have concluded that the criteria of none of the impairments set forth therein have been satisfied.
>
> The claimant's alleged learned disorder most closely approximates, but does not meet or medically equal the listed medical impairments discussed in sections 112.02 and 112.11. In this regard, listing 112.02 is neither met nor equaled due to the lack of a marked impairments in cognitive/communicative function, the lack of a marked impairment in social functioning, and the lack of marked difficulties in maintaining concentration, persistence or pace. Similarly, Medical Listing 112.11 is not met because the evidence fails to document findings of marked inattention, marked impulsiveness and marked hyperactivity.

The claimants partial blindness does not met the criteria of medical listing 102.02, because the remaining vision in the better eye after best correction is better than 20/200. (Tr. 15).

The foregoing analysis fully complies with 20 C.F.R. § 416.926, which states that the ALJ will review the symptoms, signs and laboratory findings about the impairments to determine whether the combination of the impairments is medically equal to any listed impairment. It is insufficient, on appeal, to vaguely challenge the ALJ's medical equivalence as defective, without also pointing to the evidence of record and specific listing which Plaintiff contends is equaled. Plaintiff fails to cite any specific listing, supported by evidence of record, which she contends she has met. Absent that, this Court has no basis to find that the ALJ's determination is not supported by substantial evidence.

Plaintiff further argues that the ALJ's medical equivalence analysis was in error given that the ALJ's statement that listing 112.02 was "neither met nor equaled due to the lack of marked difficulties in maintaining concentration, persistence or pace," was inconsistent with the ALJ's later finding that Plaintiff has "marked limitation in attending and completing tasks…[because] claimant has been diagnosed with ADHD." (Tr. 19.) While Plaintiff's point is not without merit, here, the ALJ's conflicting analysis is at most harmless error, because Plaintiff has failed to meet her burden of proof at the first stage of Step Three. Even if Plaintiff's assertion is taken as true— that Plaintiff has marked difficulties in maintaining concentration, persistence or pace—, the requirements for listing 112.02 are only met when *all* statutory requirements are satisfied. Additionally, an impairment "cannot meet the criteria of a listing based only on a diagnosis. To meet the requirements of a listing, you must have a medically determinable impairment that

satisfies all of the criteria of a listing." 20 C.F.R. § 416.925(d).  The full requirements of

listing 112.02 are as follows:

>
> A.  Medically documented persistence of at least one of the following:
> 1. Developmental arrest, delay or regression; or
> 2. Disorientation to time and place; or
> 3. Memory impairment, either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past); or
> 4. Perceptual or thinking disturbance (e.g., hallucinations, delusions, illusions, or paranoid thinking); or
> 5. Disturbance in personality (e.g., apathy, hostility); or
> 6. Disturbance in mood (e.g, mania, depression); or
> 7. Emotional liability (e.g., sudden crying); or
> 8. Impairment of impulse control (e.g., disinhibited social behavior, explosive temper outbursts); or
> 9. Impairment of cognitive function, as measured by clinical timely standardized psychological testing; or
> 10. Disturbance of concentration, attention, or judgment;
> AND
>
> B. . .
>
> . . .
> 2. For children (age 3 to attainment of age 18), resulting in at least two of the following:
> > a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or
> > b. Market impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary the results of appropriate standardized tests; or
> > c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or
> > d. Marked difficulties in maintaining concentration, persistence, or pace.

As stated previously, the burden is on the Plaintiff to point to evidence proving that his or her impairment matches a listing, and here, Plaintiff has not met this burden. In part B.2 of the requirements under listing 112.02, a child must have a marked impairment in at least *two* of the listed categories in order for the child's impairment to meet or medically equal a listing. The ALJ found that listing 112.02 is "neither met nor equaled due to the lack of a marked impairment in cognitive/communicative function, the lack of a marked impairment in social functioning, the lack of a marked impairment in personal functioning, and the lack of marked difficulties in maintaining concentration, persistence or pace." (Tr. 15.) In other words, the ALJ found a lack of marked limitation not simply in "maintaining concentration, persistence or pace", but in *all four* potential areas of impairment under 112.02(B)(2). Id. It is not sufficient to demonstrate that there is evidence of marked limitation in one area, when the listing requires marked limitation in two areas. As a result, the ALJ's conflicting analysis is harmless error at most.

> **c. Is the ALJ's determination that Plaintiff has a less than marked limitation in the domains of "health and physical well-being" and "caring for yourself" supported by substantial evidence?**

The ALJ's determinations that Plaintiff has a less than marked limitation in the domains of "health and physical well-being" and "caring for yourself" are supported by substantial evidence.

First, Plaintiff argues that the ALJ improperly determined that Plaintiff has a less than marked limitation in the domain of health and physical well-being.[4] Plaintiff claims

_____

[4] In this domain of functioning, the Commissioner will "consider the cumulative physical effects of physical or mental impairments and their associated treatments or therapies on…functioning…" 20 C.F.R. § 416.929a(l). The Commissioner will consider such things as: physical effects of a physical or mental

that the ALJ's findings consisted of merely five sentences, "each of which is either irrelevant or contradicted by previous ALJ findings." (Pl.'s Br. 23). Yet Plaintiff's contention ignores the entirety of the ALJ's analysis, in which the ALJ states:

> I have carefully considered the child's and the child's mother's subjective complaints under the criteria set forth in 20 C.F.R. 416.929 and SSR 96-7p. While the claimant's mother's subjective complaints are found generally credible, the objective evidence fails to disclose functional compromise of a disabling severity. The claimant is able to function adequately on a day to day basis. While the undersigned does not mean to apply that the claimant does not have difficulties due to blindness in the right eye, a learning disorder, and ADHD. However, she is enrolled in regular education classes with resource room for reading and math and IQ testing revealing she is functioning in the low average to average range. Her learning difficulties are significant but treatment methods are not shown to be ineffective but have in fact, indicated that the claimant is able to progress with continued intervention methods. Her medication is effective and her activities of daily living are not significantly limited by an medically determinable impairment. She is well mannered, cooperative, and respectful. She interacts well with her peers, although she is stronger in some subjects than others she is doing well academically, and is an average student. She is under no special treatment other than receiving medication from his family doctor and is being prescribed glasses. Although the mother testified the claimant is very poorly behaved at home, the undersigned notes at the hearing that claimant sat still and was extremely well-behaved. She was delightful and engaging and her communication was excellent. Similarly, as noted above, her noted only an obvious problems in playing cooperatively with other children. When evaluated by psychiatric consultative examiner, Dr. Crockett, the claimant was pleasant, cooperative and mostly attentive throughout the examination and her articulation was clear. While her teachers reported some problems with attention, concentration, organization and staying focused, they also indicated that she could be easily redirected. The record shows that the claimant is able to dress, bathe, and groom herself in an age-appropriate manner. She has friends, watches television, engages in sports, plays video games and engages in other age-appropriate behavior. After considering the totality of the record, the undersigned concludes the record depicts a highly functional child who engages in a variety of daily activities and interactions, although experiencing some intermittent symptoms along the way.
>
> Great weight must now be accorded to the Disability Determination Services assessment at the lower levels of adjudication (Exhibit 3A). I find their assessment well-supported and uncontradicted by the record including post-

---

disorder that make it difficult for a claimant to perform activities independently, medications or treatments with physical effects that limit performance or activities, and periods of worsening in the case of chronic conditions. 20 C.F.R. § 416.929a(l)(1-3).

hearing records submitted since earlier periods of adjudication. There are no supportive objective clinical or diagnostic findings contained in the post-hearing evidence that questions the validity of their assessment. (Tr. 24).

It is clear from the record and the ALJ's foregoing analysis that Plaintiff's impairments have, at most, a limited effect on her health and physical well-being. Rather, the cited evidence of record supports the conclusion that Plaintiff is able to function fully in both school and extracurricular activities without the hindrance of any "physical effects that. . .make it difficult. . .to perform. . .activities independently or effectively." 20 C.F.R. § 416.926a(l)(1). Therefore, there is no merit to Plaintiff's contention that the ALJ's analysis in this domain was unsupported by substantial evidence.

In addition, Plaintiff argues that her inability to perform self-care activities without reminders contradicts the ALJ's finding of a "less-than-marked" limitation in the domain of caring for yourself. Plaintiff bases this contention on the psychological evaluation performed by Dr. Crockett, where Dr. Crockett noted that Plaintiff requires reminders to perform self-care activities on a daily basis.

In the caring for yourself domain, the Commissioner will consider "how well. . .[a child] maintain[s] a healthy emotional and physical state. . ." 20 C.F.R. 416.926a(k). It is also noted that caring for yourself includes "independence and competence," a "basic understanding of your body," and "recognizing when you are ill" or in need of assistance. 20 C.F.R. § 416.926a(k)(1)(i-iv). A school-age child from the age of 6 to 12 "should be independent in most day-to-day activities," but it is acceptable for a child of this age to still require reminders to perform self-care activities daily. 20 C.F.R. § 416.926a(k)(2)(iv). An adolescent from the age of 12 to 18 should be "increasingly

independent in all day-to-day activities" and "should begin to discover appropriate ways to express. . .feelings." 20 C.F.R. § 416.926a(k)(2)(v). Several examples are also given of what limited functioning may look like in this domain, such as "plac[ing] non-nutritive objects in your mouth," the "use of self-soothing activities showing developmental regression," and "engag[ing] in self-injurious behavior." These examples provide the general scope of *some*, but not all, limitations that may be considered by the Commissioner in this domain. 20 C.F.R. § 416.926a(k)(3).

While Dr. Crockett did note during the course of her evaluation that Plaintiff requires reminders to perform self-care activities on a daily basis, Dr. Crockett's psychological assessment culminated in the determination that Plaintiff's "[a]bility to perform self-care activities is average, but that she does not do them without repeated reminders." (Tr. 218-219.) Dr. Crockett's conclusion that Plaintiff's abilities in this area are average is enough to support the conclusion that the ALJ's finding of a less-than-marked limitation in this domain is supported by substantial evidence.

The evidence from Plaintiff's teacher further supports the ALJ's determination. While Plaintiff's teacher, Erica Adamiak, indicated in the domain of "caring for yourself" that Plaintiff has "obvious problems" in the areas of "handling frustration appropriately," "being patient when necessary" and "responding to changes in own mood," these problems occurred only on a weekly basis. (Tr. 212.) It was further indicated that Plaintiff had "no" or a "slight problem" in all other areas within this domain. 20 C.F.R. § 416.926a specifically notes that a marked limitation will be found when "your day-to-day functioning" is seriously limited. In addition, in <u>Washington v. Barnhart</u>, the 9th Circuit found that plaintiff's fecal incontinence amounted to a marked limitation in the domain of

caring for oneself because it seriously interfered with his personal functioning on a *daily* basis.  Washington v. Barnhart, 41 Fed.Appx. 52 (9th Cir. 2002).  Here, Ms. Adamiak noted that Plaintiff's problems in the "caring for yourself" domain occurred on a *weekly*, not daily, basis.  Furthermore, Plaintiff's deficiencies in this area do not rise to the level of the examples in C.F.R. § 416.926a.  This supports the ALJ's conclusion that Plaintiff's impairments simply do not reach the level of a "marked limitation."

Plaintiff contends that the ALJ failed to fully discuss all of the relevant evidence in his "caring for yourself" determination, but this would be, at most, harmless error. Plaintiff takes particular issue with the fact that the ALJ did not mention that Dr. Crockett noted that Plaintiff needs reminders to perform self-care activities on a daily basis.  Yet in Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 204 (3d Cir. 2008), the Court found "no authority for the proposition that an ALJ must cite all evidence a claimant presents, including evidence that is irrelevant to her case."  Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), further elucidates this point by nothing that "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis. Rather the function of Burnett is to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review."  See Burnett, 220 F.3d at 119-20.  In turn, while it is true that the ALJ did not specifically mention one of Dr. Crockett's observations, Dr. Crockett's conclusions support the ALJ's determination. Thus, Dr. Crockett's psychological evaluation supports the ALJ's determination that Plaintiff has a *less* than marked limitation in the "caring for yourself" domain, since Dr. Crockett concludes that her capacity is average.  On account of the foregoing evidence, it

is clear that the ALJ's determinations in the domains of "health and well-being" and "caring for yourself" were supported by substantial evidence.

## **CONCLUSION**

For the reasons stated above, this Court finds that the ALJ's decision is supported by substantial evidence and will be affirmed.

Dated: November 26, 2013

/s/ Stanley R. Chesler
STANLEY R. CHESLER,
U.S.D.J.